IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| MARGARITA ROJAS, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-1776-K |
| | § | |
| CITY OF GRAND PRAIRIE and | § | |
| STEVEN CHERRY, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion and Brief to Dismiss (the "Motion") (Doc. No. 11). Defendants City of Grand Prairie and Steven Cherry move the Court to dismiss all of Plaintiff Margarita Rojas's claims against the Defendants. After reviewing the Motion, response, reply, and applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion. Because Plaintiff Margarita Rojas made the relevant statement for her § 1983 First Amendment retaliation claim as an employee and not a citizen, the Court **GRANTS** the Motion as to the § 1983 First Amendment retaliation claim against both Defendants. Because Plaintiff Margarita Rojas fails to plausibly plead that she engaged in a protected activity under the Family and Medical Leave Act ("FMLA"), the Court **GRANTS** the Motion as to the FMLA claims against Defendant City of Grand Prairie. Because Plaintiff Margarita Rojas may

1

not maintain a claim against Defendant Steven Cherry in his personal or official capacity for violating the Americans with Disabilities Act ("ADA"), the Court **GRANTS** the Motion as to the ADA claims against Defendant Steven Cherry. The Court **DENIES** the Motion as to the ADA claims against Defendant City of Grand Prairie because Plaintiff Margarita Rojas sufficiently pleads her ADA claims.

## I. Factual Background and Procedural History

The case before the Court is an employment dispute. Prior to her termination, Plaintiff Margarita Rojas ("Rojas") served as a court clerk for the City of Grand Prairie (the "City"). Defendant Steven Cherry ("Cherry"), the Court Administrator for the City, supervised Rojas. Rojas alleges that on March 15, 2018, Cherry fired Rojas. In Plaintiff's Original Complaint (the "Complaint") (Doc. No. 1), Rojas alleges that Defendants City and Cherry (collectively, the "Defendants") terminated Rojas's employment in violation of three different statutory rights.

First, Rojas pleads a claim under 42 U.S.C. § 1983 (2012) and alleges that the Defendants violated Rojas's First Amendment Free Speech rights by terminating her in retaliation for a statement made in a survey submission. Rojas alleges that shortly before her termination, Rojas responded to an electronic survey conducted by the Texas Court Clerks Association. According to the Complaint, the City required Rojas to be a member of the Texas Court Clerks Association, and the City paid the costs associated with her membership. In her response to the survey, Rojas recommended legislative

2

changes that would permit "undocumented people to obtain drivers licenses in Texas." When Cherry discovered Rojas's survey response, Cherry suspended and eventually terminated Rojas because of her statement. Rojas alleges that the City, through City Manager Tom Hart, ratified Cherry's decision to terminate Rojas in violation of her First Amendment rights.

Second, Rojas pleads claims under the FMLA against the City only. Rojas alleges that she has "Chronic Kidney Disease, Stage 4." Because of her "serious health condition," Rojas "needed time off from work for medical appointments and during periods of exacerbation." Rojas had previously received intermittent leave for her condition since July 2016. Rojas alleges that three days after submitting the appropriate forms for intermittent leave under the FMLA to the City, the City terminated her. Rojas alleges that by terminating her, the City either interfered with her rights under the FMLA or, alternatively, "retaliated against her for having availed herself of leave under the FMLA."

Third, Rojas pleads claims under the ADA. (It is unclear from the Complaint, and Rojas's response to the Motion provides no additional clarification, whether Rojas pleads her ADA claims against both the City and Cherry.) Rojas alleges that because of her kidney disease, Rojas needed to have more frequent and lengthier restroom breaks than coworkers without her condition. When Rojas informed her supervisor Elisa Arriela that she needed this accommodation, Elisa Arriela denied this requested

accommodation and told Rojas "that she needed to 'train her body.'" Rojas alleges that her termination was because of her disability or in retaliation for having sought the accommodation she requested. Rojas filed her charge with the Equal Employment Opportunity Commission and received her right to sue on May 18, 2018.

## II. Applicable Law

In considering a Rule 12(b)(6) motion, a court must determine whether the plaintiff has sufficiently stated a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). A well-pleaded complaint must allege facts upon which the claims are based and not be a conclusory recitation of the elements of a cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must state sufficient facts such that the "claim has facial plausibility" and is not merely "possible." *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff pleads a claim with facial plausibility when the "factual content . . . allows the court to draw the reasonable inference that the defendant is liable." *Id.* The complaint must allege sufficient facts to "give the defendant fair notice" of plaintiff's claims against the defendant. *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The alleged facts must be facially plausible such that the facts nudge the plaintiff's claims "across the line from conceivable to plausible." *Id.* at 570.

The Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007)

(per curiam). The Court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

The Court must generally determine a motion to dismiss for failure to state a claim based solely on the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The Fifth Circuit also allows the district court to consider documents attached to the motion to dismiss when those documents "are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

### III. Analysis

The Court address each claim of the Complaint in turn. First, the Court explains that Rojas cannot maintain her § 1983 retaliation claim for a violation of her First Amendment rights because her speech occurred as an employee and not a citizen. Second, the Court addresses how Rojas insufficiently pleaded a "protected activity" to support her FMLA claims. Third, the Court explains why Rojas cannot maintain an ADA claim against Cherry, but that her ADA claims against the City survive the Motion.

## A. The § 1983 Claim

Defendants argue, and Rojas does not dispute, that Rojas was a public employee when she completed the survey. "To establish a § 1983 claim for employment retaliation related to speech, a plaintiff–employee must show: (1) [the plaintiff] suffered an adverse employment action; (2) [the plaintiff] spoke as a citizen on a matter of public concern; (3) [the plaintiff's] interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016) (quoting *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007)).

The second element involves two related questions of law resolved by the Court: (1) "[w]hether a statement is made as an employee or as a citizen" and (2) "whether a statement addresses a matter of public concern." *Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 736 (5th Cir. 2015); *see also Rodriguez v. City of Corpus Christi*, 687 F. App'x 386, 389 (5th Cir. 2017). Before the Court can balance the competing interests of the public employee and the government employer, the Court must "engage in a threshold inquiry regarding whether the public employee spoke as a citizen at all." *Anderson*, 845 F.3d at 592. "[T]here is no First Amendment protection for the speech at all when public employees make statements as part of their official duties." *Culbertson v. Lykos*, 790 F.3d 608, 617–18 (5th Cir. 2015). "Such '[j]ob-required speech is not protected,'

6

even when it irrefutably addresses a matter of public concern." *Anderson*, 845 F.3d at 592 (quoting *Williams v. Dall. Indep. Sch. Dist.*, 480 F.3d 689, 692–93 (5th Cir. 2007)).

When determining whether a public employee's speech was part of his or her official duties, "[t]he proper inquiry is a practical one." *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006). The Court must "focus[] solely on whether the speech at issue is *ordinarily* within the scope of the employee's professional duties." *Howell v. Town of Ball*, 827 F.3d 515, 523–24 (5th Cir. 2016) (citing *Lane v. Franks*, 573 U.S. 228, 134 S. Ct. 2369, 2378 (2014); *Garcetti*, 547 U.S. at 424–25). The Fifth Circuit has had occasion since the Supreme Court's decision in *Lane* to explain how a district court should conduct its "practical inquiry" into whether a plaintiff's speech occurred while acting as a public employee or citizen. *See Anderson*, 845 F.3d at 593–99 (explaining how to determine the character of the plaintiff–speaker after *Garcetti* and *Lane*); *Hardesty v. Cochran*, 621 F. App'x 771, 776–77 (5th Cir. 2015) (explaining various factors "for determining whether and when a public employee is speaking as a citizen").

In explaining the necessary "practical inquiry" the district court must make, the Fifth Circuit emphasized that no protection exists "with regard to speech *made pursuant to a public employee's official duties*." *Anderson*, 845 F.3d at 593. Speech made while at work or about work is not necessarily made pursuant to an employee's official duties and thus may still be protected. *Id.* at 593–94. Such speech may be protected so long as the speech has "an analogue to speech by citizens who are not public employees."

7

*Id.* at 594. Expanding on this distinction, the Fifth Circuit reasoned that speech "made pursuant" to an employee's official duties is speech "made '*in the course of performing [the employee's] job*.'" *Id.* at 595 (quoting *Williams*, 480 F.3d at 694). The Fifth Circuit then turned to the *Restatement (Third) of Agency* to illustrate whether an employee's speech is or is not made in the course of performing his or her job. *Id.* at 596–97 (citing RESTATEMENT (THIRD) OF AGENCY § 7.07 (2006)). Under the *Restatement*, speech subject to an employer's control, "even if the employer has not actually directed [the employee] to speak, not to speak, or how to speak," may still be speech made in the course of performing the employee's job and thus unprotected. *Id.* at 596. "[S]peech that *owes its existence* to a public employee's professional responsibilities" is unprotected speech made as an employee rather than as a citizen. *Id.* at 597 (quoting *Garcetti*, 547 U.S. at 421–22); *see also Hardesty*, 621 F. App'x at 776–77 (listing out "several factors" that guide the "practical and fact-intensive" inquiry about whether a public employee speaks as a citizen or employee).

As the Defendants argue in their Motion, the facts pleaded by Rojas in her Complaint demonstrate that her speech was as an employee rather than as a citizen, and, therefore, is not subject to First Amendment protection. Rojas alleges that she "was required to be a member of The [sic] Texas Court Clerks Association" because of her employment with the City. Furthermore, the City paid her membership fees. Perhaps most telling, however, is that in the electronic survey response that Rojas

8

alleges is her protected speech, Rojas indicated that she represented Grand Prairie. In her response to the Motion, Rojas provides no argument as to why this speech was made as a citizen rather than as an employee. The Court finds that the speech as described in the Complaint has no analogue to speech by citizens, as the speech only occurred because the City (1) employed Rojas, (2) required Rojas to be a member of the Texas Court Clerks Association, and (3) paid the necessary fees for membership. *See Anderson*, 845 F.3d at 594. Because Rojas's speech is unprotected as a matter of law, the Court dismisses Rojas's § 1983 First Amendment retaliation claim against both Defendants. *See Westbrook v. Dallas County*, Civ. Action No. 3:16-CV-1802-B, 2018 WL 1368791, at *3 (N.D. Tex. Mar. 15, 2018) (Boyle, J.) (dismissing a § 1983 First Amendment retaliation claim when, "from the face of the pleadings, it appear[ed] that [plaintiff] was speaking as an employee rather than a citizen").

### B. The FMLA Claims

Rojas pleads her FMLA cause of action against the City only. Interpreting the Complaint broadly, the Court believes that Rojas intends to plead two separate claims under the FMLA section of the Complaint: (1) an interference claim, or, in the alternative, (2) a retaliation claim.

"The FMLA allows eligible employees to take up to twelve weeks of leave in any one-year period to address a family member's or the employee's own serious health condition." *Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 768 (5th Cir.

9

2015) (citing 29 U.S.C. § 2612(a)(1)(C), (D) (2012)). Section 2615(a) enumerates two prohibited acts for employers that are subject to the FMLA: (1) a covered employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise" an FMLA right and (2) a covered employer cannot "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" under the FMLA. *Id.* (quoting 29 U.S.C. § 2615(a)(1)–(2) (2012)). Courts often label claims based upon the first prohibited act as "interference" claims, and claims based upon the second prohibited act as "retaliation" claims." *Id.*

There are five elements for an interference claim under the FMLA: "(1) [plaintiff] was an eligible employee; (2) [plaintiff's] employer was subject to FMLA requirements; (3) [plaintiff] was entitled to leave; (4) [plaintiff] gave proper notice of [plaintiff's] intention to take FMLA leave; and (5) [plaintiff's] employer denied [plaintiff] the benefits to which [plaintiff] was entitled under the FMLA." *Caldwell v. KHOU–TV*, 850 F.3d 237, 245 (5th Cir. 2017); *see also DeVoss v. Sw. Airlines Co.*, 903 F.3d 487, 490 (5th Cir. 2018) (addressing the same elements for an interference claim before addressing the "notice" element specifically).

Construing the well-pleaded facts liberally here, the Court cannot ascertain a plausible claim for FMLA interference in the Complaint because the facts do not indicate that Rojas gave any notice of an intention to take FMLA leave. Rojas makes mention to needing time off as a result of her chronic kidney disease, and that she

"submitted the appropriate forms to be re-certified for FMLA," but these facts do not give rise to an interference claim. First, Rojas does not provide any facts that explain how she gave notice of her intention to take FMLA leave. As the Court discusses further below, Rojas only alleges that she "submitted the appropriate forms to be re-certified for FMLA on an intermittent basis." Second, this factual allegation suggests that, at the time of her termination, Rojas was not even seeking medical leave from the City. The facts presented by Rojas do not provide the basis for a plausible interference claim because, based on her own Complaint, Rojas did not give notice of her desired leave, did not even seek leave, and, thus, has not given any explanation as to how the City denied her any FMLA benefits. *See Stancu v. Hyatt Corp./Hyatt Regency, Dall.*, No. 3:17-cv-675-S-BN, 2018 WL 4471786, at *8 (N.D. Tex. Aug. 28, 2018) (Horan, M.J.) ("[Plaintiff] may allege that [the defendant] interfered with his taking leave under the FMLA. But he fails to offer evidence to show that [the defendant] 'denied him the benefits to which he was entitled under the FMLA.'" (internal citations omitted)).

To plead a claim for FMLA retaliation, a plaintiff must plead the following: "[1] [plaintiff] was protected under the FMLA; (2) [plaintiff] suffered an adverse employment decision; and either (3a) that [plaintiff] was treated less favorably than an employee who had not requested leave under the FMLA; or (3b) the adverse decision was made because [plaintiff] took FMLA leave." *Elsensohn v. St. Tammany Par. Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008) (quoting *Hunt v. Rapides Healthcare Sys., LLC*,

11

277 F.3d 757, 768 (5th Cir. 2001)); *see also Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 317 (5th Cir. 2013) (granting summary judgment in favor of the defendant on an FMLA retaliation claim because the plaintiff "failed to provide evidence that [the plaintiff] engaged in protected activity").

For reasons similar to those in the Court's analysis of Rojas's FMLA interference claim, Rojas fails to plead a plausible FMLA retaliation claim. Rojas does not allege that she participated in any "protected activity" under the FMLA because Rojas does not allege that she requested FMLA leave or took FMLA leave. *See Elsensohn*, 530 F.3d at 372. Submitting the "appropriate forms" to the City is not protected activity for at least two reasons. First, as explained by the Court in its previous analysis, Rojas does not allege that she gave notice or requested leave under the FMLA. *See Caldwell*, 850 F.3d at 245–46 (explaining that "actually request[ing] FMLA leave" can be an aspect of both FMLA retaliation and interference claims). Second, Rojas appears to misunderstand the concept of certification in her Complaint. When an employee requests leave under the FMLA, "[a]n employer may require . . . certification issued by the health care provider of the eligible employee." 29 U.S.C. § 2613(a) (2012); *see also Mauder v. Metro. Transit Authority of Harris Cty., Tex.*, 446 F.3d 574, 582 (5th Cir. 2006). In other words, for an employee to properly request leave under the FMLA, an employer may require that the employee provide medical certification. *Mauder*, 446 F.3d at 582. The facts pleaded by Rojas describe a situation in which Rojas sought for

*the City* to "re-certif[y]" her, rather than a healthcare provider. The sparse facts provided by Rojas in the FMLA section of the Complaint therefore do not support a plausible claim for either a claim of interference or retaliation under the FMLA on the multiple bases explained by the Court above.

Even if the Court found that Rojas engaged in protected activity under the FMLA, Rojas fails to allege in her Complaint facts that would support the assertion that Rojas has "a serious health condition that makes [her] unable to perform the functions of [her] position." § 2612(a)(1)(D). Rojas references "Chronic Kidney Disease, Stage 4" in her Complaint, but she provides no facts in the FMLA section of the Complaint that explain the effects of this disease on her ability to perform her job functions. *See* 29 U.S.C. § 2611(11) (2012) (defining a "serious health condition" as a condition involving "inpatient care" or "continuing treatment"); 29 C.F.R. §§ 825.113–825.115 (2018) (defining "inpatient care" and "continuing treatment," and incorporating "incapacity" into both of these definitions). The only possible description of the effects of the kidney disease on Rojas appears in the ADA section of her Complaint, and Rojas only alleges that the kidney disease caused her to need longer, more frequent restroom breaks. This alleged symptom of the kidney disease does not support a determination that Rojas is "incapacitated." *See Mauder*, 446 F.3d at 581–82 (explaining how severe diarrhea that did not incapacitate the plaintiff or prevent the plaintiff from attending work did not provide grounds for a claim under the FMLA).

Because Rojas does not allege that she either engaged in protected activity or had a serious health condition, the Court dismisses Rojas's claims for interference and retaliation under the FMLA.

**C. The ADA Claims**

Rojas's final claims are for a violation of the ADA. It is unclear from the face of her Complaint if Rojas pleads these claims against both Cherry and the City; however, as Defendants point out in their Motion, Cherry is not subject to personal liability for violations of the ADA. *Smith v. Hood*, 900 F.3d 180, 184 n.6 (5th Cir. 2018) (citing *Hay v. Thaler*, 470 F. App'x 411, 417 n.19 (5th Cir. 2012)); *see Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (explaining that "the ADA [is] judged under the same legal standards" as the Rehabilitation Act); *Lollar v. Baker*, 196 F.3d 603, 609 (5th Cir. 1999) (holding that a plaintiff cannot sue a defendant individually under the Rehabilitation Act); *Market v. Extended Stay Am.*, Civ. Action No. 3:15-CV-4065-G, 2016 WL 2914994, at *4 (N.D. Tex. May 19, 2016) (Fish, J.) ("The defendants cite cases from several district courts in the Fifth Circuit, as well as other circuit courts, that have expressly held that the ADA does not impose individual liability on an employee or supervisor because the Fifth Circuit has not expressly addressed the question. . . . Therefore, the court will act in accordance with other district courts in this circuit and other circuits in holding that an employee cannot be liable in his individual capacity under the employment provisions of the ADA."). Furthermore, Rojas cannot bring an

ADA action against Cherry in Cherry's official capacity because Rojas is suing the City on the same facts. *Shabazz v. Tex. Youth Comm'n*, 300 F. Supp. 2d 467, 473–74 (N.D. Tex. 2003) (Lynn, J.) ("Accordingly, because Plaintiff is bringing an ADA action against [the employing entity], he is prohibited from also bringing ADA claims against [the employing entity's agents] in their official capacities."). Because Rojas cannot establish a claim against Cherry for a violation of the ADA as a matter of law, the Court dismisses Rojas's ADA claims against Cherry.

Unlike all of Rojas's previous claims discussed by the Court in this Order, Rojas pleads a plausible claim against the City under the ADA. In her Complaint, Rojas alleges that she needed longer, more frequent restroom breaks because of her kidney disease. Rojas informed Elisa Arriela, her supervisor, about this desired accommodation, and Elisa Arriela refused to grant the accommodation. Rojas further alleges that the City terminated Rojas either (1) because of her disability or (2) because of this request for an accommodation. The Court interprets Rojas's allegations to plead either a discrimination or retaliation claim under the ADA.

There are three elements for a discrimination claim under the ADA: "1) [plaintiff] has a disability; 2) [plaintiff] is qualified for the position in which [plaintiff] seeks employment; and 3) [plaintiff] was discriminated against because of [plaintiff's] disability." *Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 222 (5th Cir. 2011).

15

Defendants argue in their Motion that the Complaint does not set forth sufficient facts as to Rojas's alleged disability. The ADA defines "disability" to include three different situations. 42 U.S.C. § 12102(1) (2012). The facts pleaded by Rojas only implicate subsection (A) of the definition because Rojas makes no mention of a record of impairment or to the City regarding Rojas as having an impairment. *See id.* Under subsection (A), a plaintiff is disabled if the plaintiff "(1) has a mental or physical impairment that (2) substantially limits (3) a major life activity." *Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011).

Although the Complaint is not a model of clarity and would benefit from additional facts, Rojas pleads enough facts for an ADA discrimination claim against the City to survive the Motion. Defendants argue that *Weil v. Carecore Nat'l, LLC*, 833 F. Supp. 2d 1289 (D. Colo. 2011), serves as authority for why this Court should dismiss Rojas's ADA claim. The Court finds Defendants' argument unpersuasive for three reasons. First, *Weil* is a decision from the United States District Court for the District of Colorado and is therefore persuasive case law at best. *Id.* at 1291. Second, the district court in *Weil* granted the defendant's motion for summary judgment, not a motion to dismiss for failure to state a claim. *Id.* at 1298–99. Third, the district court held that summary judgment was appropriate in *Weil* because the plaintiff failed to connect her alleged impairment to her need for additional bathroom breaks. *Id.* at 1296 ("Plaintiff acknowledged that the doctor's notes 'never defined what type of restroom break was

excused and which one wasn't.' Plaintiff also testified that she could use the restroom 'as needed,' regardless of the reason. . . . Thus, Plaintiff believed that the certificates covered any reason she might have for using the bathroom, and not merely restroom breaks associated with any particular impairment." (internal citations omitted)). In the instant case, Rojas affirmatively alleges in her Complaint that "[b]ecause of her kidney condition plaintiff needed to go to the restroom more frequently and for longer periods of time than co-workers without her disability." This allegation supports a plausible claim for ADA discrimination because it connects Rojas's alleged kidney disease and her need for restroom breaks. *Weil* is therefore less analogous to the instant case than Defendants suggest in their Motion. *Cf. Luedecke v. Tenet Healthcare Corp.*, Civ. Action No. 3:14–CV–1582–B, 2015 WL 58733, at *5–*6 (N.D. Tex. Jan. 5, 2015) (Boyle, J.) (dismissing an ADA discrimination claim when the plaintiff failed to "specif[y] what 'major life activities' [were] limited" or "present any facts describing the difficulties [the plaintiff] experience[ed] in performing any activities").

A claim for retaliation under the ADA also survives Defendants' Motion. There are three elements for an ADA retaliation claim: "(1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999). Defendants' argument in their Motion addresses only Rojas's failure to plead a "disability" under the ADA. This argument is irrelevant to an ADA

17

retaliation claim. *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008) ("Further, 'in order to prosecute an ADA retaliation claim, plaintiff need not show that she suffers from an actual disability. Instead, a reasonable, good faith belief that the statute has been violated suffices.'" (quoting *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1264 (10th Cir. 2001))). Because Rojas sufficiently pleads a claim against the City for either discrimination or retaliation under the ADA, the Court denies the Motion as to City only.

### IV. Plaintiff's Request to Amend the Complaint

When a party cannot amend a pleading as a matter of course, the party may only amend a pleading "with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* The decision whether to grant or deny leave to amend a pleading is a matter within the district court's discretion; however, the Fifth Circuit has held that "Rule 15(a) 'evinces a bias in favor of granting leave to amend.'" *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590–91 (5th Cir. 2016) (quoting *Herrman Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 566 (5th Cir. 2002)). A plaintiff seeking leave under Rule 15(a)(2) does not need to file a formal motion, but the plaintiff must support the request for leave to amend with "*some* specificity." *Id.* at 590. A plaintiff that simply "tack[s] on a general curative amendment request" in response to a motion to dismiss does not provide a sufficient basis for why the court should grant leave. *Goldstein v. MCI WorldCom*, 340

F.3d 238, 254 (5th Cir. 2003); *see also Thomas*, 832 F.3d at 590–91. "[L]eave to amend under Rule 15 is by no means automatic." *Goldstein*, 340 F.3d at 254.

In the conclusion of her response to the Motion, Rojas requests that, "if the court believes defendant's [sic] motion to have merit, [Rojas] should be directed to plead additional facts sufficient to render her claims plausible." Although it is unclear whether this statement is in fact a request to amend the Complaint by Rojas, the Court proceeds on the assumption that Rojas intended this statement to be a request to amend the Complaint.

The Court denies Rojas's request to amend the dismissed claims. Rojas's one sentence in the conclusion of her response to the Motion is the epitome of "a general curative amendment request." *See id.* Furthermore, Rojas provides no additional facts in her five-page response. She instead repeats the exact same facts from her Complaint and argues that such facts "render plausible" her claims. Without even an indication that there are additional, specific facts that might remedy the pleading defects of her dismissed claims—let alone a description of what these facts might be—the Court holds that Rojas has not properly requested leave to amend her Complaint. *See id.* at 255 (holding that the district court properly exercised its discretion in denying leave to amend because plaintiffs "did not suggest in their responsive pleading any additional facts not initially pled that could, if necessary, cure the pleading defects"); *see also Thomas*, 832 F.3d at 590 ("Although we have not provided strict guidelines as to what

19

constitutes a sufficient request for leave to amend, it is clear that *some* specificity is required."). To the extent Rojas sought leave to amend her Complaint for the claims dismissed in this Order, the Court denies such request.

V. **Conclusion**

Because Rojas's alleged speech occurred while acting as an employee of the City, the Court **GRANTS** the Motion as to Rojas's § 1983 First Amendment retaliation claim against the Defendants. Because Rojas fails to plausibly plead that she participated in a protected activity under the FMLA, the Court **GRANTS** the Motion as to the FMLA claims against the City. Because Cherry is not liable in his personal or official capacity for a violation of the ADA as a matter of law, the Court **GRANTS** the Motion as to the ADA claims against Cherry. The Court **DISMISSES WITH PREJUDICE** these claims.

Because Rojas pleads a plausible claim for either discrimination or retaliation under the ADA, the Court **DENIES** the Motion as to the ADA claims against the City.

**SO ORDERED.**

Signed March 11th, 2019.

_Ed Kinkeade_
ED KINKEADE
UNITED STATES DISTRICT JUDGE